# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JACOB O'NEAL MEARS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BRETT MCCULLEY, and CITY | ) | Civil Action No. CV-09-S-2540-NE |
| OF HUNTSVILLE, ALABAMA, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This action was commenced in the Circuit Court of Madison County, Alabama.

Defendants jointly removed the case to this court on December 17, 2009, asserting

federal subject matter jurisdiction under 28 U.S.C. § 1331.[1]  Plaintiff, Jacob O'Neal

Mears, claims that his arrest and subsequent incarceration by defendant Brett

McCulley, acting as an agent of defendant City of Huntsville, Alabama ("the City"),

violated his rights under the Fourth and Fourteenth Amendments to the United States

Constitution, as well as provisions of Alabama law.  He claims damages pursuant to

42 U.S.C. § 1983 and unspecified provisions of Alabama law (it is impossible to

---

[1] Doc. no. 1.  Defendants removed pursuant to both 28 U.S.C. §§ 1441 and 1446(a). *Id.* ¶¶
4, 7.  While noting that it was "unclear whether plaintiff ha[d] also assert[ed] certain state law claims
against defendants," the removal asserted supplemental jurisdiction over any state law claims "to the
extent they exist, pursuant to 28 U.S.C. § 1367(a)."

determine from either the original or amended complaint the precise basis of plaintiff's supplemental state law claims).[2]

The case currently is before the court on defendants' motions to dismiss some, but not all, of plaintiff's claims.[3]  While the court is loath to further prolong the initial phase of this case, the defendants' motions and the court's own attempts to parse plaintiff's first amended complaint[4] make unmistakably clear that the case may not wisely be built upon so faulty a foundation.  Consequently, the court will grant Investigator McCulley's motion in part and deny it in part; deny the City of Huntsville's motion; and order plaintiff to file an amended complaint that complies with the Federal Rules of Civil Procedure, pleading requirements elucidated by Eleventh Circuit case law, and this court's discussion of the specific deficiencies in the first amended complaint.

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This rule must be read in conjunction with Rule

---

[2] Following removal, plaintiff was granted leave to amend his complaint.  The amended complaint was filed on Jan. 21, 2010, as doc. no. 7.  *See id.*, ¶¶ 14, 16, 18, 20, 22, 24; s*ee also infra*, part III.B, discussing the lack of clarity as to what state law claims plaintiff asserts.

[3] *See* doc. nos. 10 (City's motion) and 11 (McCulley's motion).

[4] Doc. no. 7.

8(a)(2), which requires that a pleading contain "a short and plain statement of the

claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

While this pleading standard does not require "detailed factual allegations," *Bell*

*Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

U.S. —, 129 S. Ct.  1937, 1949 (2009) (citations omitted).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
>
> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id*., at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*., at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*.  *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the

complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations*, *a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis supplied).

While the Eleventh Circuit has long held claims asserted under § 1983 against individual officers to a higher-than-usual standard, in light of the plausibility requirement as articulated in *Iqbal*, utilization of this standard is no longer warranted.

[Even though] the *Iqbal* opinion concerns Rule 8(a)(2) pleading standards in general, the Court specifically describes Rule 8(a)(2) pleading standards for actions regarding an unconstitutional deprivation of rights. The defendant federal officials raised the defense of qualified immunity and moved to dismiss the suit under a 12(b)(6) motion. The Supreme Court held, citing *Twombly*, that the legal conclusions in a

complaint must be supported by factual allegations, and that only a complaint which states a plausible claim for relief shall survive a motion to dismiss. The Court did not apply a heightened pleading standard.

> While *Swann* [*v. Southern Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004)] , *GJR* [*v. Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998)], and *Danley* [*v. Allen*, 540 F.3d 1298 (11th Cir. 2008)] reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree . . . that *those cases were effectively overturned* by the *Iqbal* court. Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*. A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief.

*Randall v. Scott,* 610 F.3d 701, 709-10 (11th Cir. 2010) (emphasis supplied).

Further, the Eleventh Circuit has regularly reiterated that district courts have a "supervisory obligation" to ensure that complaints comply with the requirements of Federal Rules of Civil Procedure 8 and 10. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006). This includes ensuring that plaintiffs link the claims they make to the relevant factual predicates upon which those claims are premised with sufficient specificity to permit defendants (and courts) to comprehend the nature of the allegations their complaints contain. *E.g.*, *Lampkin-Asam v. Volusia County School Bd.*, 261 Fed. Appx. 274, 277 (11th Cir. 2008) ("[W]e have recently

observed that district courts have a 'supervisory obligation,' under Rule 12(e), to *sua sponte* direct a plaintiff to better plead his complaint 'when a shotgun complaint fails to adequately link a cause of action to its factual predicates.' ") (quoting *Wagner*, 464 F.3d at 1275).  So-called "shotgun" pleadings ignore the requirements of Federal Rule of Civil Procedure 8(a) that a complaint contain a short and plain statement of the claim demonstrating entitlement to relief.  Fed. R. Civ. P. 8(a)(2).  They also completely disregard Rule 10(b)'s requirement that discrete claims should be pled in separate counts.  *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *see also Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).

When confronted with such a pleading that might otherwise contain sufficient factual allegations to state a claim, but in the absence of a  motion for more definite statement, courts are under a duty to, *sua sponte,* order the complaint repled before resorting to more drastic measures, such as dismissal.  *See, e.g.*, *Wagner*, 464 F.3d at 1273 (reversing dismissal of a shotgun complaint, stating that the "proper remedy was to order repleading *sua sponte*"); *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001) (discussing district courts' "duty" to order a shotgun complaint repled as an initial matter, reserving dismissal as a sanction for noncompliance with such an order).  However, the Eleventh Circuit, in "rail[ing] about the evils of shotgun pleadings," has also "urged district courts to take a firm hand and whittle cases down to the few triable

6

claims, casting aside the many non-triable ones through dismissals where there is failure to state a claim . . . ." *Chapman v. AI Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) (*en banc*) (citing *Morro v. City of Birmingham*, 117 F.3d 508, 515 (11th Cir. 1997) (explaining that "[t]he use of shotgun pleadings in civil cases is a ubiquitous problem," and that, "[g]iven the seriousness of that problem, it is particularly important for the district courts to undertake the difficult, but essential, task of attempting to narrow and define the issues before trial.") (internal quotation and citation omitted).  Hence, the law requires this court, when confronted with a shotgun pleading, to actively sharpen the issues actually and reasonably in dispute through the mechanisms of ordering a repleader and dismissing baseless claims.

## II.  SUMMARY OF THE FACTS AS ALLEGED[5]

On the morning of November 26, 2008, a man presented a teller at Regions Bank in Huntsville, Alabama, with a note stating that he was armed and demanding money.[6]  After the man left with the money the teller had given him, bank personnel contacted the Huntsville Police Department ("the Department").[7]  Regions Bank provided the Department with copies of images of the robber taken from their video

---

[5] The following facts are taken exclusively from the allegations of fact contained in plaintiff's first amended complaint (doc. no. 7).  *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) ("Under both Alabama law and federal law, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case.").

[6] Doc. no. 7, ¶ 2.

[7] *Id.*

surveillance systems; and, later that evening, some of those pictures were broadcast on local television news channels.[8]  Thereafter, an informant telephoned the police, stating that plaintiff Jacob Mears was the man pictured.[9]  That night, without first obtaining a warrant, defendant Investigator Brett McCulley of the Huntsville Police Department arrested Mears at his home in Limestone County, Alabama, and transported him, ultimately, to Madison County Jail.[10]  Mears stringently protested his innocence.[11]  He claimed he was at work in Franklin County at the time the robbery occurred, and he provided, in a written statement, the names of and contact information for several members of the crew he had worked with that morning.[12]  After Investigator Mears showed him pictures of the robber, Mears noted that the pictured individual did not have a tattoo on the back of his neck, as Mears did, and that the pictured individual appeared to be bald, whereas Mears had a full head of hair.[13]

Notwithstanding those protestations, Investigator McCulley executed an affidavit on November 28, asserting he had probable cause to believe Mears had robbed Regions Bank, based upon which Mears was charged with first degree robbery

---

[8] *Id.*, ¶ 3.

[9] *Id.*

[10] *Id.*, ¶ 5.

[11] Doc. no. 7, ¶ 5.

[12] *Id.*, ¶¶ 5, 6.

[13] *Id.*

8

and bond was set at $60,000.[14]   Some time thereafter, Mears was also charged with

a robbery that had occurred in Kingsport, Tennessee, in which the same note used in

the Huntsville robbery had been used.[15]  An additional bond of $200,000 was set based

upon that charge.[16]  Several days later, two individuals who had worked with Mears

visited the Huntsville Police Department, where they spoke with Investigator

McCulley and provided written statements confirming Mears's alibi that he had been

in Franklin County at the time of the Regions Bank  robbery.[17]

On January 28, 2009, an individual was arrested during commission of a bank

robbery in Oklahoma.[18]  This individual confessed to both of the robberies with which

Mears had been charged.[19]  Further, he was bald and did not have a tattoo on the back

of his neck.[20]  Two days later, when Huntsville authorities learned of the arrest and

confession, the charges against Mears were dropped and he was released from jail.[21]

Mears avers that, as a consequence of his arrest and incarceration between

November 26, 2008 and January 30, 2009, he lost income, lost his house, lost other

---

[14] *Id.*, ¶ 7.

[15] *Id.*, ¶ 8

[16] Doc. no. 7, ¶ 8.

[17] *Id.*, ¶ 9.

[18] *Id.*, ¶ 10.

[19] *Id.*

[20] *Id.*

[21] Doc. no. 7, ¶ 10..

possessions, and suffered mental anguish and emotional damages.[22] Mears asserts that Investigator McCulley, in both his individual and official capacities, deprived Mears of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and state law.[23]  In addition, he asserts that the City of Huntsville is vicariously or directly responsible for the injuries he suffered.

## III. DISCUSSION

### A.    Defendants' Motions to Dismiss

Defendants do not seek dismissal of plaintiff's first amended complaint in its entirety.[24]  Instead, they attempt to weed out specific portions of plaintiff's claims that they contend lack any legal foundation.  Particularly, defendants argue that four aspects of the complaint are due to be dismissed:  *i.e.*, (1) all official capacity claims asserted against Investigator McCulley under both § 1983 and state law; (2) all claims against both defendants under § 1983 for violations of Alabama law; (3) all state-law tort claims, other than plaintiff's negligence claim against the City of Huntsville; and (4) any state-law claim for wrongful supervision and training against the City.

With one exception, however, those portions of plaintiff's claims that defendants attack are inextricably entwined with other portions of the claims

---

[22] *Id.*, ¶ 11.

[23] *Id.*, ¶¶ 14, 16, 20, 22.

[24] *See* doc. no. 10, at 1; doc. no. 11, at 1.

defendants do not seek to have dismissed. Indeed, plaintiff himself contends in his response to this motion that some of the "claims" at issue in this motion are, in reality, not claims at all, but are instead clarifications of legal standards, or alternative ways of stating permissible claims.[25] While defendants' arguments are, on the whole, substantively persuasive, the piecewise parsing that would necessarily result from dismissal of each aspect of the claims they identify as deficient would disserve both the parties and this court, as well as unnecessarily muddle the future progress of this suit. Therefore, this court will grant Investigator McCulley's motion and dismiss those claims pled against him in his official capacity as redundant and duplicative of the claims pled against the City. Those claims are clearly due to be whittled from this suit before it progresses. However, this court will deny the motions to dismiss without prejudice to refiling following the repleading ordered below, with respect to those aspects of the first amended complaint that may state a claim if properly pled.

### 1.   Dismissal of the official capacity claims against Investigator McCulley

Counts II and V of plaintiff's first amended complaint assert claims against Investigator McCulley in his official capacity on the basis of, respectively, 42 U.S.C.

---

[25] *See, e.g.*, doc. no. 16, at 2-3 (contending that plaintiff's apparent assertion of state law claims under 42 U.S.C. § 1983 are in reality relevant in the sense that they may be "relevant to the consideration of the assertions of immunity by the defendants," or, in the alternative, to determining the scope of the constitutional tort of false arrest).

§ 1983 and unspecified "laws of the State of Alabama."[23]  Investigator McCulley seeks

dismissal of all of the official-capacity claims, state and federal.[24]  Both defendants

contend, in the jointly filed brief in support of their respective motions to dismiss, that

these official capacity claims are redundant and duplicative of the claims plaintiff

makes directly against the City of Huntsville and are, therefore, due to be dismissed.[25]

The purpose and procedural incidents of official capacity suits as interpreted by both

the federal courts and Alabama courts persuade this court that these claims are, in fact,

identical in all relevant respects to the claims plaintiff asserts against the City.

Consequently, were these claims to remain in the suit, they would result in

unnecessary confusion and duplicative efforts by the parties, and their dismissal could

not conceivably alter any recovery to which plaintiff may be entitled.  The official

capacity claims are due to be dismissed.

Under § 1983, a suit against an officer in his official capacity "generally

represent[s] only another way of pleading an action against an entity of which [the]

officer is an agent." *Monell v. New York City Department of Social Services*, 436 U.S.

658, 690 n.55 (1978).  "As long as the government entity receives notice and an

opportunity to respond, an official-capacity suit is, in all respects other than name, to

_____

[23] Doc. no. 7, ¶¶ 15-16, 21-22.

[24] Doc. no. 10, ¶ 1.

[25] Doc. no. 12 at 3-6.

be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).  An official capacity suit "is not a suit against the official personally, for the real party in interest is the [governmental] entity."  *Id.* at 166.

An individual officer will only be liable in his official capacity "when the entity itself is a 'moving force' behind the deprivation" of a federal right. *Id.* at 165 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).  Further, the scope of that liability is precisely congruent with the employing entity's liability if sued directly.  *See id.* at 167 ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess . . . ."); *Chatham v. Adcock*, 334 Fed. Appx. 281, 287 (11th Cir. 2009) ("[P]unitive damages are unavailable in a suit against a county and, hence, in a suit against a county employee in his or her official capacity.").  Even the source of funds to satisfy judgments rendered against either the official or the entity is identical.  *Graham*, 473 U.S. at 166.

"Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).  When both types of claims are asserted, the Eleventh Circuit has approved of treating them as a single claim, as well as removing the official capacity

claims from the case as "redundant and possibly confusing to the jury." *Id.*; *Abusaid v. Hillsborough County Board of County Commissioners*, 405 F.3d 1298, 1302 (11th Cir. 2005); *see also Jordan v. Blackwell*, No. 5:06-cv-214 (HL), 2008 WL 4449576, at *6 (M.D. Ga. Sept. 29, 2008) ("dismiss[ing] as redundant" claims against individual police officer in his official capacity when claims were also brought against the relevant employing entity); *Smith v. Brevard County*, 461 F. Supp. 2d 1243, 1251 (M.D. Fla. 2006) (dismissing official capacity claims where brought simultaneously with direct claims against the employing county).

Alabama is equally explicit about the correspondence between official capacity claims and claims against municipalities, as well as the desirability of dispensing with any official capacity claims when the two are pled in the same suit. *E.g.*, *Ex parte Town of Londesboro*, 950 So. 2d 1203, 1207 (Ala. 2003) ("[C]laims against state officers in their official capacity are 'functionally equivalent' to claims against the entity they represent."). As defendant correctly notes, the decision of the Alabama Supreme Court in *Dickinson v. City of Huntsville*, 822 So. 2d 411 (Ala. 2001), is determinative. In that case, the trial court held that claims made against the mayor of the City of Huntsville were, in fact, against the City itself. *Id.* at 414. Based upon this logic, the trial court substituted the City as the proper defendant. *Id.* Affirming this result, the Alabama Supreme Court held that the mayor

14

is, in her official capacity, within the line and scope of her office, the agent of the City, through whom the City acts. Thus, to sue the mayor in her official capacity is simply another way of suing the City. Therefore, the trial court did not err in substituting the City for Mayor Spencer, the original defendant.

*Id.* at 415.

Plaintiff contends that the official-capacity claims in Counts II and V are not redundant because the City enjoys "immunities, restrictions on liability and/or restrictions on the amount of liability" that Investigator McCulley in his official capacity does not.[26]   As the preceding discussion demonstrates, however, this argument is unsupportable.  In all of these respects, Investigator McCulley would be liable only to the extent that the City of Huntsville would be liable.  Thus, the official-capacity claims alleged in Count II, under § 1983, and Count V, under "the laws of the State of Alabama," merely restate the coordinate claims alleged in Counts III and VI against the City of Huntsville.[27]   As a result, these claims cannot serve as independent bases of liability and are due to be DISMISSED with prejudice.

### 2.    Other grounds asserted for dismissal

Defendants also seek dismissal of:  (1) "all claims under § 1983 for violations of Alabama law";[28] (2) all state-law tort claims other than negligence alleged against

---

[26] Doc. no. 16, at 2.

[27] *Compare* doc. no. 7, ¶¶ 15-16, 21-22, *with id.* ¶¶ 17-18, 23-24.

[28] Doc. no. 10, ¶ 1; doc. no. 11, ¶ 2.

the City;[29] and (3) "any claim for wrongful supervision or training" against the City.[30] While, in the abstract, defendants' argument on each of these issues is persuasive, careful consideration of the first amended complaint itself suggests that the deficiencies defendants identify are more accurately characterized as symptomatic of the general confusion engendered by the complaint's shotgun-pleading style. In light of the Eleventh Circuit's admonitions that district courts order clarification before dismissing claims that, though inartfully pled by counsel, may nonetheless have merit, *e.g.*, *Wagner*, 464 F.3d at 1280 (holding it an abuse of discretion to dismiss, rather than order repleading *sua sponte*, an amended complaint that contained sufficient factual information, but "failed to connect the[] causes of action to the facts alleged"), this court is constrained to deny the motions with respect to these three asserted grounds for dismissal.

### a.    Claims under § 1983 for violations of Alabama law

Counts I, II, and III of plaintiff's complaint, styled as claims for damages against defendants under § 1983 for "violation[s] of the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the state of Alabama," not only reference violations of Alabama law generally, but also incorporate

---

[29] Doc. no. 10, ¶ 2.

[30] *Id.*, ¶ 3.

references to Alabama Code §§ 15-10-1, 15-10-3, and 15-10-70 through 15-10-72

within the first five subparagraphs of each count.[31]  As defendants aptly put it, "[i]t

appears plaintiff has sued defendants under section 1983 for violations of Alabama

law . . . ."[32]  Both defendants seek to have any such references to Alabama law in the

§ 1983 counts dismissed, to the extent they actually constitute claims.[33]

It is axiomatic that a "violation of state law . . . is not enough by itself to support

a claim under section 1983."  *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir.

2002); *see also Vaughn v. City of Athens*, 176 Fed. Appx. 974, 976 (11th Cir. 2006)

(holding "immaterial" a claimed Fourteenth Amendment due process right under

Alabama tort law).  Section 1983 was enacted to provide an avenue of redress against

governmental entities and officials whose conduct under color of state law deprives

a plaintiff of *federal* rights, privileges, or immunities secured by the United States

Constitution or federal statutes.  *See, e.g.*, *Collins v. City of Harker Heights*, 503 U.S.

115, 119 (1992) (stating that Section 1983 "does not provide a remedy for abuses that

do not violate *federal* law") (emphasis supplied); *Knight*, 300 F.3d at 1276 (rejecting

false arrest claim premised on allegation that the arrest violated Florida law and

reiterating that "[§] 1983 does not create a remedy for every wrong committed under

---

[31] Doc. no. 7, ¶¶ 14, 16, 18.

[32] Doc. no. 12, at 6.

[33] Doc. no. 10, ¶ 1; Doc. no. 11, ¶ 2.

the color of state law, but only for those that deprive plaintiff of a *federal right*")
(emphasis supplied).  The statute was enacted for the express purpose of enforcing the
Fourteenth Amendment's restrictions on state authority, not to police the compliance
of state actors with provisions of state law.[34]

Plaintiff argues in his brief that the "allegations of violations of state . . . law are
relevant to the consideration of [his] § 1983 claims,"[35] citing *Russo v. Bridgeport*, 479
F.3d 196 (2d Cir. 2007), in which the Second Circuit stated that, when "analyzing
claims alleging the constitutional tort of false arrest" under § 1983, "we have generally
looked to the law of the state in which the arrest occurred."  Curiously, however,
plaintiff's complaint never mentions the "constitutional tort of false arrest."[36]  Nor, for

---

[34] *See, e.g., Mitchum v. Foster*, 407 U.S. 225 (1972), where the Court observed that:

Section 1983 was originally § 1 of the Civil Rights Act of 1871 . . . .  It was
"modeled" on § 2 of the Civil Rights Act of 1866, . . . and was enacted for the
express purpose of "enforc[ing] the provisions of the Fourteenth Amendment."  . .
. The predecessor of § 1983 was thus an important part of the basic alteration in our
federal system wrought in the Reconstruction era through federal legislation and
constitutional amendment.  As a result of the new structure of law that emerged in
the post-Civil War era — and especially of the Fourteenth Amendment, which was
its centerpiece — the role of the Federal Government as a guarantor of basis federal
rights against state power was clearly established.  . . .  Section 1983 opened the
federal courts to private citizens, offering a uniquely federal remedy against
incursions under the claimed authority of state law upon rights secured by the
Constitution and laws of the Nation.

*Id*. at 238-39 (citations and footnotes omitted).  Other cases providing insight into the history of §
1983 include *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 834 (1985); *Monroe v. Pape*, 365 U.S.
167, 171 (1961).

[35] Doc. no. 16, at 3.

[36] *See generally* doc. no. 7.

that matter, does it even once use the word "false" in any of its permutations, as one might expect in a complaint that appears to allege the constitutional torts of "false imprisonment" or "false arrest."  *See, e.g.*, *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) ("A § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment.") (citing *Cannon v. Macon County*, 1 F.3d 1558, 1562-63 (11th Cir. 1993), *modified on other grounds*, 15 F.3d 1022 (1994)); *Bashir v. Rockdale County*, 445 F.3d 1323, 1327-28 (11th Cir. 2006) (holding that an arrestee may successfully assert a  claim for "false arrest . . . in violation of the 4th Amendment" pursuant to § 1983).  *Cf. Mahone v. City of Montgomery*, No. 2:09-CV-118-WKW, 2009 WL 3275411, at *2 (M.D. Ala. Oct. 13, 2009) ("The claims may be theoretically distinct, as false arrest implicates the Fourth Amendment, while false imprisonment implicates the Fourteenth Amendment right to due process.") (citing *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009)).[37]  Nonetheless, violations of state law could have relevance to the scope of plaintiff's claims.  *See, e.g.*, *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) ("To establish a federal malicious prosecution claim

---

[37] State law will also be relevant in supplying the statute of limitations and the relevant tolling rules for false arrest/false imprisonment claims under § 1983.  *Wallace v. Kato*, 549 U.S. 384, 394 ("We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitation.") (citing *Hardin v. Straub*, 490 U.S. 536, 538-539 (1989); *Board of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 484-486 (1980)).

under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution [as set forth in the law of the relevant state], and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures."); *see also Angillilo v. Collier County*, No. 10-10895, 2010 WL 3330004, *3 (11th Cir. Aug. 25, 2010) (applying the elements of the Florida tort law definition of malicious prosecution in the context of a § 1983 malicious prosecution suit).

As defendants note, plaintiff cites the same five sections of the Alabama Code in each of the three § 1983 counts (and, for that matter, in every count of the complaint)[38] without providing even the faintest indication as to why they may be relevant to any potential claim, even were this court to be persuaded by the Second Circuit's reasoning. An examination of Alabama caselaw discloses not a single reported case in which any of these five code sections, governing police procedures, was held to furnish a private right of action for damages. *E.g.*, *Upshaw v.McArdle*, 650 So. 2d 875 (Ala. 1994) (holding that an arrest in violation of § 15-10-3 could only support an independent claim under § 6-5-70 for the tort of false imprisonment).

---

[38] The cited sections include §§ 15-10-3 (outlining the circumstances under which a warrantless arrest is permissible); 15-10-1 (authorizing officers to make arrests "within the limits of the county" wherein they serve); 15-10-70 (providing that arrested individuals are to be committed to jail "nearest to the place of arrest" and then notice of the confinement and arrest issued to the sheriff of the county "in which such person is triable"); 15-10-71 (providing that, upon notice from the place of confinement, the sheriff of the county wherein an arrested individual is triable shall apply for removal to that sheriff's county); 15-10-72 (setting forth the form of endorsement on the removal order required of the arresting officer). *See* doc. no. 7, ¶¶ 14, 16, 18, 20, 22, 24.

Therefore, they cannot be claimed as independent bases of liability.

Rather, as throughout the complaint, the references to Alabama law in plaintiff's § 1983 counts appear simply to be part of the repeated cadence of alleged violations of the Fourth and Fourteenth Amendments of the Constitution and unspecified or irrelevant state law that constitute each count of the complaint.  While defendants are surely correct that § 1983 furnishes no entitlement to damages for violations of state law and, so, a claim of that variety is unsupportable, it is far from obvious that those portions of plaintiff's complaint are "claims."  It would be a fruitless endeavor to dismiss these bits of language, and such an action could compound the confusion about precisely what plaintiff is attempting to allege in his § 1983 claims to the extent that state law may be shown to shed light on that question.  More importantly, in light of the Eleventh Circuit's directive to order repleading where a complaint is in such abject disarray, that will be the proper remedy.  *See Byrne*, 261 F.3d at 1133 ("[W]e have stated on several occasions over the past twelve years, if, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent power, must intervene *sua sponte* and order a repleader.").

### b.    State law claims against the City other than for negligence.

Count VI of the first amended complaint asserts a "CLAIM FOR DAMAGES

UNDER THE LAWS OF THE STATE OF ALABAMA FOR VIOLATIONS OF THE
PLAINTIFF'S RIGHTS UNDER THE LAWS OF THE STATE OF ALABAMA AND
FOR VIOLATIONS OF THE PLAINTIFF'S FOURTH AND FOURTEENTH
AMENDMENT RIGHTS."[39]   The Count incorporates the entirety of the preceding
complaint by reference, including the previous counts against Investigator McCulley,
and also seeks to impose liability upon the City based upon  its alleged deliberate
indifference to plaintiff's rights under the United States Constitution and the laws of
Alabama.[40]   The City seeks dismissal of any claim against it "except negligence" as
barred by § 11-47-190 of the Alabama Code.   Tellingly, defendants' brief never
identifies specifically *what* degrees of fault beyond negligence plaintiff claims.[41]   This
undoubtedly is because even the most careful reading of plaintiff's recursive
complaint could not disclose what degrees of fault are, in fact, alleged against the City.

The City's legal proposition is well established.   Alabama Code § 11-47-190
limits municipal liability to two categories.   As relevant here, the only potential basis
for liability is vicarious liability resulting from the "neglect, carelessness or
unskillfulness" of the municipality's agents or employees.   *See Ex parte City of
Tuskegee*, 932 So. 2d 895, 910 (Ala. 2005) ("This statute limits a municipality's

---

[39] Doc. no. 7, ¶¶ 23-24.

[40] *Id.* at 24.

[41] *See* doc. no. 12, at 9-10.

liability for the acts of its agents to those acts that are negligent, careless, or unskillful. Section 11-47-190 provides a municipality immunity from liability for the acts of its agents that are carried out in bad faith or with malice."); *see also Roberts v. City of Geneva*, 114 F. Supp. 2d 1119, 1213 (M.D. Ala. 2000) ("[Under § 11-47-190], a city's liability is limited to negligence-based claims only."); *City of Prattville v. Post*, 831 So. 2d 622, 627 n.7 (Ala. Civ. App. 2002) ("Section 11-47-190 . . . limits monetary damages against a municipality to those claims alleging negligence.").  This statutory limitation of liability precludes tort claims against a municipality premised upon an agent's malicious conduct, *Scott v. City of Mountain Brook*, 602 So. 2d 893, 894-95 (Ala. 1992) (*per curiam*), willful conduct, *City of Birmingham v. Brown*, 969 So. 2d 910, 914 n.3 (Ala. 2007), wanton conduct, *Hilliard v. City of Huntsville*, 585 So. 2d 889, 892 (Ala. 1991), or reckless conduct, *Altamayer v. City of Daphne*, 613 So. 3d 366, 369 (Ala. 1993).

In response, plaintiff argues that "deliberate indifference, or gross negligence, is a heightened form of negligence" without providing even a single citation to support that conclusion.  Deliberate indifference certainly does not equate to gross negligence in the Eleventh Circuit, *A.P. ex rel. Bazerman v. Feaver*, 293 Fed. Appx. 635, 652 (11th Cir. 2008) ("[D]eliberate indifference requires a much higher standard of fault than . . . gross negligence . . . ."), and this court's independent investigation disclosed

no authority whatsoever for the concomitant proposition under Alabama law.[42]  By far the more likely explanation for plaintiff's inclusion of the words "deliberate indifference" in the state-law based Count VI against the City is that the entirety of Count VI is identical in all respects, save the most minute rewording, to the § 1983 claim pled against the city in Count III.  Beyond the captions, the operative portions of the two counts appear to differ only in the sense that the words "as follows" at the end of the introductory portion of ¶ 18 in Count III were changed to "the following," and moved approximately twenty words backwards in the sentence in Count VI.  In other words, plaintiff's state law Count VI is a crude cut-and-paste job from his federal law Count III.

While plaintiff is correct in his counterargument that deliberate indifference is necessary to overcome "immunities conferred on municipalities"[43] under § 1983, *e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."), precisely the opposite is true under Alabama law.  Hence, plaintiff's repetitive, shotgun pleading style has resulted

---

[42] Indeed, it appears that all reported Alabama cases that utilize the phrase "deliberate indifference" do so only in the context of claims under federal law.  *E.g.*, *J.B. v. Lawson State Community*, 329 So. 3d 164, 167 (Ala. 2009).

[43] Doc. no. 16, at 3.

in such confusion about precisely what degrees of fault his state law count against the City asserts that even plaintiff's counsel is uncertain.

More problematically, however, Count IV incorporates, by reference, all previous paragraphs of the complaint, including those in which Investigator McCulley is alleged to have acted "recklessly, with deliberate indifference, willfully, maliciously and/or in excess of his legal authority."[44]  As these standards are incorporated by reference, presumably plaintiff intended to claim that the City is vicariously liable under Alabama law for Investigator McCulley's actions taken with these higher degrees of culpability.  As noted above, however, such claims would be lacking entirely in legal foundation.  Yet plaintiff never addresses this apparent incongruity,[45] and defendants also appear to have, perhaps out of uncertainty about what plaintiff alleges, carefully skirted it.[46]  While plaintiff is not precluded from alleging various degrees of fault in the alternative, the admittedly low threshold for specificity set by *Iqbal*, 556 U.S. at —, 129 S. Ct. at 1949-50, and the Federal Rules of Civil Procedure does require, at the very minimum, that he at least state the level of fault he does, in fact, allege with sufficient specificity for it to be discernible.  Again, however, engaging in the tortuous parsing that would be necessary to excise those degrees of

---

[44] Doc. no. 7, ¶¶ 14, 16, 20, 22

[45] *See* doc. no. 16.

[46] *See* doc. no. 12.

fault in excess of negligence through dismissal, when plaintiff appears to all-but-concede they are not "claims" but merely a function of sloppy pleading, would ultimately result in a complaint more confused than the present first amended complaint.  In light of the repleader ordered below, such an action is unnecessary.

### c.    State law claims for negligent training and supervision against the City

Finally, the City also seeks dismissal of plaintiff's state law claims against it in Count VI, premised on negligent training and supervision.[47]  The court suspects that, as with the phrase "deliberate indifference," plaintiff's inclusion of the language "failure to properly train and supervise" in Count VI is a result of a failure to proofread after plaintiff's counsel copied the language *en masse* from Count III's § 1983 claim.  *E.g.*, *City of Canton v. Harris*, 489 U.S. 378, 387 (1989) (discussing the "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983").  Again, defendants' argument is broadly persuasive (with one caveat), but it would simply further complicate matters to excise this language.

In their joint brief,[48] defendants cite *Ott v. City of Mobile*, 169 F. Supp. 2d 1301 (S.D. Ala. 2001), for the proposition that there exists no cause of action under Alabama law for negligent training or supervision against an individual supervisory

---

[47] Doc. no. 11, ¶ 3.

[48] Doc. no.12 at 12-15.

employee. *Id.* at 1314-15.  The court in *Ott* reasoned that, since municipal liability under Alabama Code § 1147-190, with respect to the actions of a police officer, was limited to respondeat superior liability and there could be no individual liability upon which to premise a negligent training or supervision claim, the cause of action for negligent training and supervision of a municipality was "due to be dismissed."  *Id.* at 1315.  Several other federal courts interpreting the same provisions of Alabama law concur.  *E.g.*, *Hamilton v. City of Jackson*, No. 06-164-KD-C, 2007 WL 1725605, * 8 (S.D. Ala. June 13, 2007).

Nonetheless, the Alabama Supreme Court has, in the years since *Ott* was decided, left some room for potential municipal liability for negligent supervision or training of a police officer.  In *Blackwood v. City of Hanceville*, 936 So. 2d 495 (Ala. 2006), for example, the Court reversed a grant of summary judgment against the municipal defendant for negligent training and supervision.  *Id.* at 507.  There, the defendant city police officer, traveling "at a minimum of between 91 and 101 miles per hour" in a zone with a posted speed limit of 55 miles per hour, collided with a car in which the plaintiff was a passenger. *Id.* at 500.  Several years prior to the accident, a former police chief had promulgated a policy that prohibited police officers responding to an emergency from traveling in excess of the posted speed limit by more than 15%.  *Id.*  The promulgating chief's successor, however, had rescinded that

policy. *Id.*  In reversing summary judgment for the City on the plaintiff's claim of negligent training and supervision, the court gave little explanation, stating only that the City's immunity would be linked to that of the city police officer. *Id.* at 498, 507. Similarly, in *Howard v. City of Atmore*, 887 So. 2d 201 (Ala. 2003), the Alabama Supreme Court  declined to deny the existence of a municipality's vicarious liability for failure to supervise or train in terms as unequivocal as those in *Ott*. *Id.* at 211. There, the police chief defendant was entitled to immunity because there was no "statute, rule, or regulation binding on him" as to the manner in which he trained and supervised the officers in his department. *Id.* at 510.  Consequently, the City could not be vicariously liable for his actions. *See id.* at 511 (stating that, since the peace officer immunity statute shielded the police chief defendant, "the trial court correctly entered a summary judgment for the City").  In holding that the City and the chief were entitled to summary judgment, however, the natural implication of the court's language was that such liability was *not* absolutely foreclosed.  Nonetheless, plaintiff adverted to no such argument in his brief opposing dismissal,[49] so it is not clear whether he does in fact allege liability under state law theories or whether the claim is yet another artifact of  his careless use of copy and paste.  The reasoning in *Ott* is

---

[49] *See* doc. no. 13.  Plaintiff's argument against the City's attack on the *state law* negligent supervision claims focused entirely upon the wholly irrelevant procedural posture of *Ott* and *federal case law* regarding § 1983.

persuasive, especially in light of plaintiff's failure to name an individual supervisor in the first amended complaint upon whose actions the City's vicarious liability could be based.  But in light of the repleader ordered below and the sliver of possibility *Ott*'s determination of the nonexistence of the negligent training and supervision claim is no longer conclusive, there is no basis to deny plaintiff an opportunity to plead it consistently with the Federal Rules of Civil Procedure.

Defendants' contentions with respect to the § 1983 claims seemingly premised on state law, claims against the City apparently premised on degrees of greater fault than negligence, and claims against the City for failure to train or supervise each have force that plaintiff should carefully consider in redrafting his complaint as ordered below.   However, the deficiencies defendants identify may just as easily be characterized as manifestations of the ills of a shotgun complaint.  It simply makes no sense to dismiss tiny three- or four-word segments of plaintiff's page-and-a-half long counts and permit the suit to proceed with a complaint that, in addition to being a slapdash cut-and-paste job, would then also be pocked with holes.  Moreover, due to the poor quality of the complaint, it is entirely unclear whether these portions of the first amended complaint may even properly be characterized as "claims" rather than wholly irrelevant legal conclusions, facts, or misplaced arguments.  Consequently, defendants' motions to dismiss, insofar as they seek dismissal of the state law claims

under § 1983, the state law claims against the City alleging degrees of fault higher than negligence, and the state law claims against the City for failure to train or supervise, are DENIED without prejudice to refiling after plaintiff repleads his complaint as ordered below.

**B.     Plaintiff's Shotgun Complaint**

For decades, the Eleventh Circuit has "roundly, repeatedly, and consistently condemn[ed]" shotgun pleadings. *Davis v. Coca-Cola Botting Co. Consolidated*, 516 F.3d 955, 979; *see also id.*, at 979 n.54 (11th Cir. 2008) ("[S]ince 1985, [the Eleventh Circuit has] explicitly condemned shotgun pleadings upward of fifty times."). "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Further, they "disregard . . . the principle that separate discrete causes of action should be pled in separate counts." *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996). "[F]ailure to 'present each claim for relief in a separate count, as required by Rule 10(b),' constitutes shotgun pleading and undermines the ability of a court to administer justice." *Corbitt v. Home Depot U.S.A., Inc.*, 589 F.3d 1136, 1166 (11th Cir. 2009) (quoting *Anderson v. District Board of Trustees of Central*

*Florida Community College*, 77 F.3d 364, 366-67 (11th Cir. 1996)), *vacated and reh'g en banc granted*, 598 F.3d 1298 (11th Cir. 2010), *dismissed on joint stipulation*, 2010 WL 2900384.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from which [the court] can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis omitted) (internal quotations omitted).  Further, "a shotgun complaint fails to adequately link a cause of action to its factual predicates." *Wagner*, 464 F.3d at 1275.  When this is the case, "the proper remedy is to order repleading *sua sponte*." *Id.*

In all respects, plaintiff's first amended complaint contravenes these admonitions.  As the opening paragraph of each of plaintiff's six counts, he "incorporate[s] herein by reference" all preceding paragraphs of the complaint, including those in the preceding count.  Moreover, in complete disregard of Federal Rule of Civil Procedure 10(b), every count reiterates every right alleged to have been violated, such that, as noted above, the state law counts reiterate the alleged Federal Constitutional violations, the § 1983 counts reiterate the alleged state law violations, and all counts allege violations of at least seven different statutory or constitutional rights.  Indeed, a careful examination of the complaint reveals that, except for the captions and minor rewording that has no effect on the allegations made, the claims

31

against Investigator McCulley set forth in Counts I-II and IV-V are identical to one another,[50] and the claims against the City set forth in Counts III and VI are identical.[51] Worst of all, the factual allegations included in subparagraphs [a]-[g] of every count of the complaint are exactly identical — copied and pasted to the letter— to those included in every other count, regardless of the different claims those counts purport to assert.  As a result, there is such insufficient linkage between the facts alleged and any claim pled that it is nearly impossible to discern what claims are even asserted.

The Eleventh Circuit has "held that a Complaint requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Corbitt*, 589 F.3d at 1170.  Here, plaintiff has not even provided a recitation of elements nor given a name to the claims he alleges.  For example, plaintiff cites the same five sections of the Alabama code in each count of his complaint, each time accompanied by the legal conclusion that these code sections were violated.  However, no disclosed case appears to hold that any of these sections furnishes a personal cause of action under which a person harmed by its violation would be entitled to damages.

---

[50] The only differences are in the captions, substitution of the word "individual" or "official" prior to the word capacity in the second paragraph of the count, and deletion of the phrase "and punitive damages" from the claims captioned "UNDER THE LAWS OF THE STATE OF ALABAMA."

[51] As noted above, beyond the captions, the operative portions of the two counts appear to differ only in that the words "as follows" at the end of the introduction of ¶ 18 in Count III were changed to "the following" and moved approximately twenty words back in the sentence in Count VI.

Nonetheless, plaintiff asserts facts — again in every count of his complaint — which could be read to state various causes of action under Alabama tort law.  Even so, nowhere in the complaint does the plaintiff actually name which, if any, of these causes of action he asserts, what the elements of these causes of action are, and which of the facts alleged would satisfy these elements.  Plaintiff does include the word "negligently" (again, in every count of his complaint), but, again, fails to elucidate what duty owed him defendant breached or which facts establish the duty and breach.[52]  Yet defendants did not seek dismissal of the state law counts in full.[53]

Faced with a complaint in which all factual assertions and all legal conclusions are pled in all counts without even the barest discussions of which facts support which legal theories or, for that matter, what legal theories even form the basis for plaintiff's asserted entitlement to relief, defendants should have moved this court for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).  *See Davis*, 516 F.3d at 983-84 (11th Cir. 2008); *see also Bailey v. Janssen Pharmaceutica, Inc.*, 288 Fed. Appx. 597, 603 ("When faced with a shotgun complaint, we have encouraged defendants to make motions for more definite statements or courts to demand repleader — and not, as the case were, to dismiss a complaint with prejudice.").  This

---

[52]  *Cf. Norris v. City of Montgomery*, 821 So. 2d 149, 153-55 (2001) (providing that violations of the Alabama Code may constitute "statutory negligence," but only when those sections impose a mandatory duty).  Plaintiff does not clearly make any allegations to that effect.

[53]  *See* doc. nos. 10, 11.

defendants did not do.  Instead, as described above, they moved for partial dismissal for failure to state a claim, pointing, for the most part, to statements of a few words that, in the context of the kitchen-sink counts, are not even recognizably "claims" as that word is commonly used.  "In light of defense counsel's failure to request a repleader,' the court, acting *sua sponte*, should . . . instruct[] plaintiff's counsel to file a more definite statement."  *Davis*, 516 F.3d at 984.[54]  Accordingly, plaintiff is ORDERED to file an amended complaint that complies with the pleading requirements of Federal Rules of Civil Procedure 8(a) and 10(b) and is mindful of the deficiencies in the first amended complaint identified above.

## IV.  CONCLUSION

This court concludes that defendant Investigator McCulley's motion to dismiss should be GRANTED with respect to the official capacity claims asserted against him

---

[54] So doing serves several important purposes:

> District court intervention in this fashion accomplishes several objectives. First, it conserves judicial and parajudicial resources and thereby benefits litigants standing in the queue waiting to be heard.  Second, it curtails the need for satellite litigation under Rule 11 . . . or the court's inherent power.  Third, it minimizes counsel's and his client's exposure to a criminal contempt citation.  Fourth, it limits the potential for post-litigation tort actions for abuse of process or malicious prosecution.  Fifth, early sua sponte intervention — coupled with the imposition of punitive measures when the use of abusive litigation tactics is deliberate — operates as both a specific and a general deterrent.  And, finally, early sua sponte intervention will ensure public confidence in the court's ability to administer civil justice.

*Byrne*, 261 F.3d at 1133-1134 (11th Cir. 2001) (internal citations and footnotes omitted).

in Counts II and V of the first amended complaint.[55]  Accordingly, Counts II and V are DISMISSED with prejudice.  For the reasons stated above, the remainder of defendants' motions to dismiss are DENIED without prejudice to refiling following the repleading hereafter ordered.  Plaintiff is ORDERED to file an amended complaint within 30 days from the date of this order consistent with the Federal Rules of Civil Procedure and the above opinion.

DONE this 1st day of September, 2010.

_____
United States District Judge

---

[55] Doc no. 11, ¶ 1.